IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF N.H.

| | |
|---|---|
| LORETTANN GASCARD, Pro Se | )<br>)<br>) |
| Plaintiff. | ) |
| v. | )<br>) Civ. A. No. 1:14-CV-220-JL |
| FRANKLIN PIERCE UNIVERSITY, et al | )<br>) |
| Defendants. | )<br>) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER
MOTION TO SUPPLEMENT/AMEND PLEADINGS IN COMPLAINT**

NOW COMES the Plaintiff, Lorettann Gascard, pro se, and submits this Memorandum of Law in support of her motion to supplement/amend pleadings. Although Plaintiff made a good faith attempt, she was unable to successfully obtain concurrence/agreement from defendants' counsel.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim[s] showing that the pleader is entitled to relief." In order to state an FMLA claim that survives Fed Civ. P. 12(b)(6) and for which relief may be granted, it is sufficient for the Plaintiff to "allege facts demonstrating temporal proximity between the protected conduct and the adverse employment action..." See Reilly v. Cox Enterprises, Inc., C.A. No. 13-785S (1st Cir. 2014).

Along with the context specific pleading standard that applies to to FMLA retaliation claims, Plaintiff appreciates the court's recognition of the Plaintiff's pro se status. "The court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." Bonner v. Circuit Court of St. Louis, 526 F.2d 1331, 1334 (8th Cir. 1975) (quoting Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974)). Therefore, if there is any

2

possible theory that would entitle the Plaintiff to relief, even one that the Plaintiff has not thought of, the Court cannot dismiss this case. Finally, courts will go to particular pains to protect pro se litigants against consequences of technical errors if injustice would otherwise result. U.S. v. Sanchez, 88 F.3d 1243 (D.C. Cir. 1996). If the Court can reasonably read the Plaintiff's submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor

syntax and sentence construction, or litigant's unfamiliarity with rule requirements. Boag v. MacDougall, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); McDowell v. Delaware State Police, 88 F.3d 188, 189 (3rd Cir. 1996); United States v. Day, 969 F.2d 39, 42 (3rd Cir. 1992) (holding pro se petition cannot be held to same standard as pleadings drafted by attorneys); Then v. I.N.S., 58 F.Supp.2d 422, 429 (D.N.J. 1999).

## BACKGROUND

Plaintiff was approved a leave under FMLA from October 22 – December 18, 2014 based on her serious health condition. She submitted a return to work authorization form to HR on December 18th and returned to work on December 19, 2014. Plaintiff resumed her duties as gallery coordinator on December 19th, conducting an inspection of the gallery space, and found what appeared to be a missing art work issue and queried about this to, among others, Dean McKeever in an email dated December 21st (See Complaint at ¶ 158). This email states that she had returned to work, and was addressing gallery duties. Without warning the Plaintiff was informed by Defendant Dean McKeever on January 13, 2015 (See Complaint at ¶¶ 161, 163) that the Plaintiff was no longer gallery coordinator through the following circumstances:

3

During the interim between her returning to work from an FMLA leave and the commencement of her sabbatical, Plaintiff planned to organize and prepare for her return as gallery coordinator at the end of her sabbatical leave in fall 2015. Given that Dean McKeever herself had charged Plaintiff with conducting a formal program review of the gallery in fall 2015 (including formalizing gallery policies) and approved a sabbatical research project focusing on art gallery exhibition practice, Plaintiff's using part of this important period to prepare for fall 2015 was not only her right, but utterly reasonable.

Along with these other duties in the gallery, the Plaintiff proceeded with the following: The newly appointed FPU University President, Andrew Card was to begin his position at the University on January 10th. Since the original gallery schedule, closing the then current exhibition on January 9th, was put in place before his appointment, Plaintiff contacted Bob St. Jean, who is responsible for risk management, on January 9, 2015 with a request to extend insurance for art works in the gallery until January 23, 2015, so that the President would not pass through an empty gallery space. Once the extended insurance coverage had been confirmed, Plaintiff communicated to colleagues via email whose student works were being exhibited that the exhibition could now stay in place several weeks longer in deference to the newly appointed President.

On January 13, 2015 (within 2 hours of having communicated the show's extension to colleagues), Plaintiff received an email from Dean McKeever, stating that Nathan Sullivan not the Plaintiff was now gallery coordinator in spite of Plaintiff returning from FMLA leave. (See Complaint at ¶¶ 161, 163). This was the first word from Defendant Dean McKeever to Plaintiff that Plaintiff had been relieved of her position as gallery coordinator. In other words, Plaintiff resumed her responsibilities as gallery coordinator after returning from her FMLA leave

assuming that, as per FMLA, her position would be still in place until the beginning of her sabbatical. See FMLA 29 U.S.C § 2614(1)(A)-(B).

Although Nathan Sullivan had been appointed interim gallery director during Plaintiff's sabbatical for spring semester 2015, the spring semester would not begin until January 19th. Plaintiff informed Dean McKeever of this via email. (See Complaint at ¶ 165). Dean McKeever's reply ignored that upon return from FMLA leave, Plaintiff had the right and obligation to resume her position until the beginning of the spring semester. Rather, Dean McKeever replied via email that she had not only installed Nathan Sullivan as gallery coordinator while Plaintiff was on FMLA leave and that she had not "relieved" him even when the Plaintiff returned from leave, but that he would remain gallery coordinator "at least" until the end of Plaintiff's sabbatical. (See Complaint at ¶ 166). Dean McKeever then proceeded to follow-up with an email she sent to the entire Fine Arts and Graphic Communications Departments at FPU, announcing her directive and added that all communication regarding the gallery be directed to Nathan Sullivan. (See Complaint at ¶ 168). By January 14th, the exhibition had been completely dismantled and any efforts by Plaintiff to extend the duration of the gallery exhibition had been squashed and Plaintiff's scheduled plans to use the gallery in preparation for her sabbatical project were made impossible. (See Complaint at ¶¶ 169, 170).

It is important to emphasize that Nathan Sullivan, a male under 40 years old, hired in 2010 and whose name appears throughout the Plaintiff's complaint was only appointed as interim gallery coordinator during Plaintiff's sabbatical. Referencing Dean McKeever's January 13th emails, she repeatedly and publically indicates that this appointment might morph into a permanent instatement of Mr. Sullivan as gallery coordinator, even though Mr. Sullivan has no listed experience as gallery coordinator/director/curator.

5

The Plaintiff has directed the University's Art Gallery since 1998. During her 1997 interview for the position at Franklin Pierce University, this duty was announced as part of her assumed duties. The Plaintiff receives salary and benefits for this position. The position entails one quarter (1/4) of her contracted duties. (See Articles 10.2.1 and 10.2.2 of the Collective Bargaining Agreement.) As such she teaches 3 rather than 4 courses per semester since her gallery duties equate to the load of a full course.

The Plaintiff is scheduled for a research sabbatical beginning spring semester (January 19th is listed as the commencement of spring semester 2014-2015) focusing on art exhibition practice on college and university campuses.

There is simply no reasonable justification for not having reinstated the Plaintiff as gallery coordinator after her FMLA leave and to indicate that she will not continue as gallery coordinator after her sabbatical. Dean McKeever had in her five-year performance review of the Plaintiff praised the Plaintiff's work in the art gallery, writing the following:

> *"I wish to commend especially your work with the gallery. Under sometimes challenging conditions you have continued to provide the university's administrators, faculty, staff and students with well-articulated experiences of the myriads of art..."*

Until Plaintiff amended an EEOC claim in 2013, which was followed by a barrage of extreme micro-management by Defendants, there was only documented praise of Plaintiff's performance as a gallery coordinator. This treatment by Defendant Dean McKeever only increased in intensity as exhibited in an email exchange on June 30, 2014, between Defendant and Plaintiff—a mere 28 days after Defendant Dean McKeever had been served a summons for this present case before the Court. (See Complaint at ¶¶ 184-193).

**Retaliation under FMLA**

On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position. 29 U.S.C. § 2614(1)(A)-(B). Additionally, the Family and Medical Leave Act of 1993 prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. 29 U.S.C. § 2615(a)(2).

The bar that needs to be met in order for an FMLA retaliation claim to survive at the Fed. R. Civ. P. 12(b)(6) stage is outlined in a recent FMLA case within this Circuit: "Alleged facts demonstrating temporal proximity between the protected conduct and the adverse employment action is sufficient to make a claim plausible when considered in tandem with a common sense reading of the pleading." See Reilly v. Cox Enterprises, Inc., C.A. No. 13-785S (1st Cir. 2014).

When bringing forward a retaliation claim under FMLA, an adverse employment action is not limited to a material change in the terms and condition of employment; rather, it also encompassed any action "that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." See Millea v. Metro-North R.R. Co., — F.3d —, 2011 WL 3437513 (2d Cir. Aug. 8, 2011). In other words, had the Plaintiff known of Defendant McKeever's plans that Plaintiff would be removed from her position of gallery coordinator, this action would have figured into her decision of whether or not to take FMLA leave for a serious health condition—essentially preventing her from exercising her rights under FMLA.

Although the above standard (defining an adverse action within the FMLA context as not limiting an adverse action to only changes in employment conditions) has been met by the Plaintiff, the Plaintiff's removal from her position as gallery coordinator culminates in a significant change of her employment conditions for the following reasons: 1) her position as

7

gallery coordinator constitutes 1/4 of her job load, 2) her gallery work is the central focus of her upcoming research sabbatical in 2015 and 3) the fact that essential elements of her professional identity and reputation hinge on this work.

By not reinstating the Plaintiff as coordinator of the Thoreau Art Gallery after her return from FMLA leave on December 19, 2015, transferring the position to Mr. Sullivan, and even repeatedly indicating that upon Plaintiff's return from sabbatical leave Nathan Sullivan might well continue as gallery coordinator, Defendant Dean McKeever, retaliated against Plaintiff violated her protected FMLA rights.

**Individual Liability for FMLA Violations**

A majority of federal courts addressing the issue of private supervisor liability have concluded that such liability exists. "Similarly the trend within this Circuit [1st] favors individual liability." See Reilly v. Cox Enterprises, Inc., C.A. No. 13-785S (1st Cir. 2014).

The Reilly court explains that "[a] person may be individually liable under the FMLA if [(1)] he or she had supervisory authority over the plaintiff and [(2)] was partly responsible for the alleged violation."

Defendant Dean McKeever, was clearly in a supervisory position over the Plaintiff. In her own words in a June 30, 2014 email to the Plaintiff: *"it [the Gallery] does come under the confines of Academic Affairs, and I am the Dean of Academic Affairs at Rindge."* Dean McKeever was wholly responsible for the FMLA violation, removing the Plaintiff from her position as gallery coordinator and replacing her with Mr. Sullivan, as evidenced in her January 13, 2015 email to the Plaintiff and entire Fine Arts and Graphic Communication Departments. (See Complaint at ¶¶ 166, 168).

The Court should therefore impose individual liability on Defendant McKeever for the FMLA violation.

**Intentional Infliction of Emotional Distress (IIDE)**

To recover for intentional infliction of emotional distress, a plaintiff must show that the defendant [1] acted intentionally or recklessly; [2] the acts were extreme and outrageous; and that [3] the caused distress was severe. See Morancy v. Morancy, 593 A.2d 1158, 1159 (N.H. 1991). The New Hampshire Supreme Court, like most jurisdictions, embraces comment d of the Restatement of Torts § 46 in defining "outrageous conduct."[1]

On January 16, 2013 Plaintiff met with Defendants McKeever and Meredith, to discuss accommodations for Plaintiff's medical condition under ADA. During this meeting, Plaintiff shared with and guided defendants through a detailed digital slide presentation showing images of her esophagus (the esophagram depicted the Plaintiff's diaphragm, chest cavity and stomach). The following comments were made during this presentation:

> *McKeever: "Ooh! That's [stomach] a little dislocated is it not?"*
> *Plaintiff: "My stomach is in my chest cavity"*
> *McKeever: "Exactly!"*
> *Plaintiff: "...and its headed toward the heart"*
> *McKeever: "Ahh, ok.*

Toward the end of the presentation:

> *Plaintiff: "I think you have seen enough."*
> *McKeever: "That helps us understand this."*

---

[1] Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Even as early as 2012, Defendant McKeever, unequivocally had knowledge that Plaintiff was "particularly susceptible to emotional distress because of [her] physical...condition." Brown v. Casey's Retail Co., 35 IER Cases (BNA) 1129 (S.D. Ill. May 13, 2013) (quoting Honaker v. Smith, 256 F.3d at 492 (7th Cir. 2001)). (In Brown, Plaintiff made a state law claim for IIED along with her FMLA claim). A 2012 note by Plaintiff's physician Lisa Ramey[2] explicitly referred to Plaintiff's physical symptoms as being "triggered by meetings". (See Complaint at ¶ 197). In addition, the issue of bullying at meetings and its effect on the Plaintiff were discussed at length during the January 16, 2013 meeting attended by Defendants McKeever and Meredith and the Plaintiff. (See Complaint at ¶ 199). Courts consider "whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity; behavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the actor knew the plaintiff was particularly susceptible." See Brown. Not only was Defendant McKeever aware of the Plaintiff's susceptibility to emotional distress, but was also aware that Plaintiff's medical condition had already lead to emotional distress. In other words, rather than being simply aware of the potential for emotional stress, she had knowledge of actual events where bullying at meetings had led to an increase in emotional stress of the Plaintiff.

"In the context of an employer-employee relationship, courts have found extreme and outrageous behavior where the employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." Brown v. Casey's Retail Co., 35 IER Cases (BNA) 1129 (S.D. Ill. May 13, 2013) (quoting Honaker v. Smith, 256 F.3d at 491 (7th Cir. 2001)). In denying Plaintiff

---

[2] Plaintiff claims that this letter should not have been shared with Union President Dough Ley, violating her confidentiality under ADA.

10

her right to return to her position as gallery coordinator and engaging in a barrage of ongoing and excessive micro-management of an individual engaging in a protected activity, Defendant McKeever clearly abused her power. For the foregoing reasons, Defendant McKeever's actions must be deemed extreme and outrageous.

The next required element of an IIED claim is to show Defendant acted with intent or reckless disregard. Again, long before (since at least 2012) Defendant McKeever violated Plaintiff's FMLA rights, Defendant McKeever unquestionably had knowledge of Plaintiff's physical state. Therefore, Defendant McKeever was at the very least reckless as she acted with complete disregard of the likelihood that her actions would cause Plaintiff emotional distress. However, considering her detailed and long-standing knowledge of Plaintiff's physical state and the fact that she was aware that Plaintiff's condition had already lead to emotional distress, Defendant McKeever must have known that such distress was substantially certain to result from her conduct. Defendant McKeever therefore acted with intent against Plaintiff.

The final element of an IIED claim requires Plaintiff to show that she suffered emotional distress due to Defendant's conduct. Beyond having fulfilled this base requirement, Plaintiff is able to prove that she has experienced a worsening of her medical condition since the FMLA violation occurred.

Finally, courts exercise supplemental jurisdiction over state law claims independent of the outcome of federal claims if these claims "arise from the same factual allegations." see <u>Davis v. United States Postal Service</u>, Inc. et. al., 2003 WL 21146167, 14 A.D. Cases 669, 26 NDLR P 25, 2003 DNH 81 (D.N.H May 16, 2003); 28 U.S.C. § 1367(a) (1993 & Supp. 2002).[3]

---

[3] district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

11

## CONCLUSION

Especially in light of an ongoing litigation against Defendant Dean McKeever by the Plaintiff, one would expect Defendant Dean McKeever to proceed in a way that is particularly cognizant of Plaintiff's rights. However, seemingly unimpressed by the context and circumstances which surround her actions, she brazenly imposes her will and preferences by removing the Plaintiff from her duties as gallery coordinator after her return from FMLA leave without any justifiable reason for doing so. Even after Plaintiff informed the Defendant that her sabbatical had yet to commence, not only did McKeever not correct the course she was on, but rather accelerated at full throttle by announcing in a mass email to all Fine Arts and Graphic Communication Faculty members, Nathan Sullivan's appointment as gallery coordinator to be "effective until at least the end of spring semester 2015." By publicly and humiliatingly cutting Plaintiff off from all related gallery communication and indicating to all Fine Arts and Graphic Communication faculty members that these should be directed only to Nathan Sullivan, she seemingly attempts to affirm and legitimize her own desires by forcing through a fait accompli.

Through her actions, Defendant Dean McKeever exhibited blatant disregard for Plaintiff's protected rights under the FMLA, and has shown a willingness to knowingly inflict intentional emotion distress on the Plaintiff and most importantly indicates that she will not cease to do so in the future.

In light of the above, Plaintiff requests of the court to grant her the relief sought.

Dated: January 22, 2015

Respectfully submitted.
Lorettann Gascard, pro se

*/s/ Lorettann Gascard, pro se*
Lorettann Gascard, pro se
348 Route 202
Rindge, NH 03461
(603) 899-5404

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January 2015, the forgoing was provided via Priority Mail to:

Talesha L. Caynon, Esquire
Bernstein Shur, Counselors at Law
670 N. Commercial Street, Suite 108
P.O. Box 1120 Manchester, NH 03105

*/s/ Lorettann Gascard, pro se*
Lorettann Gascard, pro se