UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Lorettann Gascard

     v.                                  Civil No. 14-cv-220-JL
                                        Opinion No. 2015 DNH 049
Franklin Pierce
University *et al.*


**MEMORANDUM ORDER**

     Faced with a pro se lawsuit from one of its faculty members
alleging various forms of employment discrimination in violation
of federal law, Franklin Pierce University (joined by several of
its administrators who have also been named as defendants) has
moved to dismiss the complaint, arguing that it fails to state a
claim for relief.  See Fed. R. Civ. P. 12(b)(6).  This court has
jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1367
(supplemental jurisdiction).

     Dismissal under Rule 12(b)(6), as the defendants
acknowledge, is appropriate only when the complaint "lacks
sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face,'" i.e., when "the well-
pleaded facts do not permit the court to infer more than the mere
possibility of misconduct."  Ashcroft v. Iqbal, 556 U.S. 662,
678-79 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,
570 (2007)).  As explained below, the complaint readily meets
that standard, except insofar as it (1) attempts to hold the

university administrators individually liable for alleged violations of federal employment statutes which, under case law from our Court of Appeals, do not contemplate such liability, <u>see</u> <u>infra</u> Part II.A.4, and (2) makes a state-law negligence claim based on the defendants' failures to prevent the allegedly discriminatory or retaliatory acts that Gascard suffered, because that claim is barred by the exclusivity provision of the workers' compensation law, N.H. Rev. Stat. Ann. § 281-A:8, I(b), <u>see</u> <u>infra</u> Part II.A.5.  Following oral argument, the defendants' motion to dismiss is granted as to the claims against the administrators, as well as the negligence claim, but is otherwise denied.[1]

After the defendants' motion to dismiss was fully briefed, Gascard filed a motion to amend and to supplement her complaint. <u>See</u> Fed. R. Civ. P. 15(a)(2), (d).  Through the motion--which the defendants oppose--Gascard seeks to add claims against the university and its dean for (1) retaliation against Gascard for taking leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1), and (2) intentional infliction of emotional

---

[1]The defendants also challenge some of the relief sought in the complaint, including a buy-out of Gascard's contract and an award of retirement benefits.  While it is difficult to see the basis for such relief in a case, like this, where no illegal termination or constructive discharge is alleged, making decisions on the availability of particular remedies at this stage would be putting the cart before the horse.  The court therefore declines to address the availability of Gascard's prayed-for relief at this point.

distress at common law.  Following oral argument, and as
explained below, the motion is granted as to the FMLA retaliation
claim, but denied as to the intentional infliction of emotional
distress claim--which, as the defendants argue, would be futile.

## I.   **Background**

In ruling on the defendants' motion, the court accepts the
following factual allegations as true.  See, e.g., Medina-
Velazquez v. Hernandez-Gregorat, 767 F.3d 103, 108 (1st Cir.
2014).  The plaintiff, Lorettann Gascard, has served as professor
of art history at the university (and its sole art historian)
since 1997, and as the director of the university art gallery
since 1998.  In late 2011, she took about two and one-half months
of short-term disability leave due to "situational stress," but
returned to teaching in early 2012.  Later that year, in October,
Gascard applied for the position of coordinator for the
department of fine arts, a position for which she is "completely
qualified."  Nevertheless, the university awarded the post to one
of Gascard's colleagues, a man under the age of 40 who had worked
there only since 2010.

Shortly thereafter, in December 2012, Gascard provided her
immediate supervisor with a note from a physician "stating that
because of stress-related factors" she was "restrict[ing] Gascard
from meeting attendance [and] assemblies."  In response, the

3

university gave Gascard permission only to "leave meetings if she fe[lt] symptoms of situational stress"--an arrangement which her physician "found precarious."[2]

Later, in March 2013, Gascard "brought to the attention" of university administrators that "bullying during departmental meetings [was] a central cause of [her] situational stress," but received the "off-handed" response that "body language and mimicry do not constitute bullying."  Gascard further alleges that the university has granted three of her colleagues "[b]lanket accommodation waivers . . . regarding the attendance of meetings."  Nevertheless, the university has "not offered adequate accommodations" and has "continued to ignore [Gascard's] physician's warning."  Gascard further complains that, without her consent, the university "disseminated" the doctor's note and other "medical information of hers" by providing it to one of her colleagues (who is also a "union officer").

In February 2013, Gascard filed a charge of disability discrimination against the university with the Equal Employment Opportunity Commission ("EEOC").  That same month, she "was the sole volunteer to offer her services to a committee of long

---

[2]The complaint also references "[a]ccommodation of teleconferencing, in which [Gascard] calls in to the meeting," but it is unclear when that accommodation was instituted and, in any event, she alleges it "has led to heightened bullying."

trusted colleagues"--which Gascard identifies in her objection to the motion to dismiss as the "General Liberal Education Committee"--but was "without discussion denied this position." Instead, the position was awarded to "a male colleague who had not volunteered," with the explanation that he "needed more committee work." A few months later, Gascard received a performance review where her "requirement for more service to the [u]niversity is pointedly indicated" (quotation marks omitted).

In May 2013, Gascard amended her EEOC charge to include allegations of age and sex discrimination, as well as retaliation. Subsequently, her complaint alleges, the university "escalated its harassment," and goes on to reference a command in an executive summary that Gascard "produce more showings" in her role as director of the university art gallery and other "unwarranted demands that [she] attend to tasks that were already completed." Gascard further alleges that, "after [she] had charged the [university] through the EEOC," it "disseminated personal and sensitive material to a colleague in its position statement to [Gascard's] EEOC charge"--material "involving action against [her] and her family completely unrelated to the colleague's charge." In February 2014, the EEOC issued Gascard a notice of her right to sue--which she exercised by filing this action here in a pro se capacity in May 2014.

Subsequently, in October 2014, Gascard began a period of FMLA leave.  She returned to work in mid-December 2014, when she began attending to matters in the campus art gallery.  On January 13, 2015, however, the dean, defendant Kim McKeever, informed Gascard that "she was no longer coordinator of the art gallery," since McKeever had given that responsibility to another faculty member while Gascard was on leave.  While Gascard acknowledges that she had been scheduled to take a sabbatical during the spring semester, she points out that the semester had yet to start at the time McKeever announced that she had been relieved of her responsibilities over the gallery, and that McKeever has also suggested that he may not return those responsibilities to her even after she returns from sabbatical.  Gascard alleges that McKeever has stripped her of her duties as gallery coordinator as of the spring 2015 semester in retaliation for her taking FMLA leave during the prior semester.

## II.  **Analysis**

### A.  **Failure to state a claim**

While the organization of Gascard's original complaint is somewhat unorthodox, it appears to assert the following claims:

- disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a);

- age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a);

• sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1);

• retaliation for filing and amending her EEOC charge, in violation of the anti-retaliation provisions of the foregoing statutes, see 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. §§ 2000e-3(a) (Title VII), 12203(a) (ADA); and

• negligence in "failing to supervise" the other defendants or "failing to protect" Gascard.

In moving to dismiss, the defendants argue that Gascard's complaint fails to state a claim for relief under any of these theories.  As explained below, the court disagrees--except as to the negligence claim, and the statutory claims against the university administrators.

## 1.   Disability discrimination

As the defendants recognize, Gascard's disability discrimination claim appears to embrace three theories:  that the university (a) failed to reasonably accommodate her alleged disability, in violation of 42 U.S.C. § 12112(b)(5)(A), (b) promote her to the position of fine arts department coordinator or to appoint her to the General Liberal Education Committee,[3] in violation of 42 U.S.C. § 12112(a), and

---

[3]In their reply memorandum, the defendants protest that their failure to appoint Gascard to this committee "was not understood to be part of her complaint."  While the complaint does not identify the committee by name, it expressly states that, in February 2013, Gascard "was the sole volunteer to offer her services to a committee of long-trusted colleagues," but that she "was expressly and without discussion denied this position

(c) disclosed her doctor's note and other medical information to a colleague, in violation of 42 U.S.C. § 12112(d)(3)(B). Contrary to the defendants' arguments, Gascard's complaint sufficiently states a claim under all of these theories.

### a.    Failure to accommodate

"To make out a reasonable accommodation claim, [a plaintiff] must show (1) that she suffers from a disability, as defined by the ADA, (2) that she is an otherwise qualified individual, meaning that she is nevertheless able to perform the essential functions of her job, either with or without reasonable accommodation, and (3) that the [defendant] knew of her disability and did not reasonably accommodate it." Valle-Arce v. P.R. Ports Auth., 651 F.3d 190, 198 (1st Cir. 2011) (quotation marks, bracketing, and footnote omitted).  In moving to dismiss Gascard's reasonable accommodation claim, the defendants do not question that she can satisfy the first two of these elements; indeed, they acknowledge that the university "found that she was

---

due to her disability."  In any event, Gascard identifies the committee by name in her objection to the motion to dismiss--yet, in their reply, the defendants do not question that the complaint states a claim for Gascard's non-appointment to the committee based on her disability.  Following suit, the court has simply assumed that Gascard has stated such a claim, despite the defendants' suggestion at oral argument (which the court doubts, in any event) that non-appointment to the committee could not have been an adverse employment action because the position comes with no additional pay or other tangible benefits.

a qualified person with a disability as it understood that she was able to perform the essential functions of her job with a reasonable accommodation."  Instead, the defendants suggest that the university in fact provided her with such an accommodation when "it allowed her either to participate by phone or to leave meetings if necessary to avoid symptoms of situational stress."

But Gascard alleges facts adequately supporting the inference that this accommodation was not, in fact, reasonable, including that (a) her physician deemed it "precarious," (b) as she informed the defendants, it did not prevent the bullying at the meetings from continuing to exacerbate her stress, and (c) other faculty members had been given a "blanket waiver" from attending meetings altogether.  The defendants argue that the proffered accommodation was reasonable in spite of these allegations (except for the alleged opinion of Gascard's physician, which they ignore), which may well be a plausible inference--but it is not the only plausible inference.  Again, a motion to dismiss for failure to state a claim can be granted only where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  Iqbal, 556 U.S. at 678-79.  Based on the facts set forth in the complaint, it is by no means impermissible to draw the inference that the university's proffered accommodation was unreasonable.

9

Accordingly, the defendants' motion to dismiss is denied insofar as it is directed at the failure-to-accommodate claim.

### b.    Failure to promote

To establish a prima facie case of a discriminatory failure to promote, a plaintiff must "show that (1) [she] is a member of a protected class, (2) [she] was qualified for [an] open position . . . , (3) [she] was denied the position, and (4) the position was given to someone with similar or inferior qualifications." Ahmed v. Johnson, 752 F.3d 490, 496 (1st Cir. 2014).  The defendants more or less acknowledge that the complaint alleges these facts as to the department coordinator role, stating in their objection that Gascard (who, again, they admit is disabled) "asserts that she [was] qualified for this position and that the Dean gave the position to a less experienced employee" (citation omitted).[4]  Since they make out a prima facie case, these facts are more than sufficient to state a plausible claim of disability discrimination.  See Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013) ("It is not necessary to plead facts

---

[4]At oral argument, the defendants maintained that, given her stress reactions to meetings, Gascard was not in fact qualified for the department coordinator position, since once of its essential functions is running department meetings.  But this court does not ordinarily consider arguments raised for the first time at oral argument, see, e.g., Doe v. Friendfinder Network, Inc., 540 F. Supp. 2d 288, 304 n.19 (D.N.H. 2008), and will not do so here.

sufficient to establish a prima facie case at the pleading
stage") (citing Swierkiewicz v. Sorema, 534 U.S. 506(2002)).

### c.   Breach of confidentiality

In addition to requiring reasonable accommodations to, and
preventing discrimination on the basis of, known disabilities,
the ADA also mandates that certain information "regarding the
medical condition or history of any employee" be "treated as a
confidential medical record." 42 U.S.C. § 12112(d)(4)(B)-(C)
(cross-referencing id. § 12112(d)(4)(B)).  As noted supra,
Gascard alleges that the university disclosed, to one of her
colleagues, the doctor's note she had provided in support of her
request for a workplace accommodation.  This allegation would
appear to state a claim for the university's violation of the
foregoing confidentiality provisions of the ADA.

In the only suggestion to the contrary contained in their
memorandum supporting their motion to dismiss, the defendants
assert that this allegation "is not material" because Gascard
"has established no causal relationship between disclosure of
medical information, disability discrimination, a failure to
accommodate, and/or any harm she has allegedly suffered."  As
best as the court can understand this point, it seems to overlook
the fact that the ADA sets forth independent prohibitions on
disability-based job discrimination, 42 U.S.C. § 12112(a),

11

including by failure to accommodate, id., § 12112(b)(5)(A), on the one hand, and the disclosure of certain employee medical information, on the other, id. § 12112(d)(3)(B).  The statute itself does not limit its prohibition on such disclosures to those that are done in furtherance of some act of disability discrimination, and the defendants provide no authority for reading the statute that way.  The court declines to do so.

While the majority of the cases to consider the issue have held that, to recover for a violation of the ADA's confidentiality provisions, an employee must show "actual damage (emotional, pecuniary, or otherwise)," Tice v. Centre Area Transp. Auth., 247 F.3d 506, 519 (3d Cir. 2001) (citing cases), this court need not decide at the moment whether that requirement applies because, even if it does, Gascard has satisfied it, at least at this stage.  Her complaint alleges that, as a result of the defendants' unlawful conduct, she has suffered "emotional distress, humiliation, [and] anguish," and her objection to the defendants' motion specifically links those categories of harm to the alleged disclosure of her medical information to her colleague.  Accordingly, the complaint states a claim against the

university for violating the confidentiality provisions of the
ADA, 42 U.S.C. § 12112(d)(3)(B).[5]

### 2.   Age and sex discrimination

Gascard claims that, in addition to her disability, her age
also played an impermissible role in the decision not to appoint
her as department coordinator, while her sex also played an
impermissible role in the decision not to appoint her to the
General Liberal Education Committee.  Again, even a prima facie
case of discriminatory failure to promote requires only
(1) membership in a protected class, (2) qualification for an
open position, (3) denial of a promotion to the position, and
(4) the employer's awarding the position to someone with similar
or inferior qualifications instead.  Ahmed, 752 F.3d at 496.

As already discussed, Gascard's complaint, by the
defendants' own admission, sets forth the elements of a

---

[5]In their reply, the defendants argue that "these provisions
do not apply to medical information that an employee provides sua
sponte to her employer in support of a requested accommodation,"
as they say Gascard did here.  This court ordinarily does not
consider arguments raised for the first time in reply, see, e.g.,
Doe, 540 F. Supp. 2d at 303 n.16, and will not do so here--
particularly because, as the defendants acknowledge, there is no
binding First Circuit authority on this point and other
authority, including EEOC guidance, to the contrary.  The
defendants also suggested, for the first time at oral argument,
that they were permitted to disclose Gascard's medical
information to her colleague, since he also served as her union
representative, but the court will not consider that late-
blooming argument at this point either.  See n. 4, supra.

discriminatory non-promotion claim as to the department
coordinator job, see Part II.A.2, supra--while that analysis
considered Gascard's claim that she was not given the job due to
her disability, it applies with equal force as to her claim that
she was not given the job due to her age, since she alleges that
the job went to someone under 40 years of age instead. See,
e.g., Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215,
219 (1st Cir. 2008). Gascard has likewise set forth a prima
facie claim that she was denied the committee appointment on a
account of her sex, through her allegations that she "was the
sole volunteer" for the spot, but that it was "granted to a male
colleague who had not volunteered" with the explanation that he
"needed more committee work" (rather than any claim that Gascard
was unqualified). So, again, even though a plaintiff need not
plead facts establishing a prima facie case of discrimination to
survive a motion to dismiss, see Rodriguez-Reyes, 711 F.3d at 54,
Gascard has done that here as to her claims that she was denied
the department coordinator position due to her age and the
committee appointment due to her sex. The defendants' motion to
dismiss those claims is denied.

### 3.   Retaliation

Gascard claims that the university took a series of actions
against her in response to her filing a charge of disability

14

discrimination against it with the EEOC, and later amending that charge to include additional allegations of discrimination.  To establish a prima facie case of retaliation, as the defendants acknowledge, a plaintiff need show only that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) a causal nexus exists between the protected conduct and the adverse action.  See, e.g., Garayalde-Rios v. Mun. of Carolina, 747 F.3d 15, 24 (1st Cir. 2014).  As is also the case when evaluating allegations of discrimination, see Part II.A.2, supra, "the plaintiffs need not plead facts in the complaint that establish a prima facie case" of retaliation, so long as that, "in sum, the allegations of the complaint make the claim as a whole at least plausible."  Id. (quotation marks omitted).

Without addressing this standard, the defendants argue that Gascard's complaint fails to state a retaliation claim, repeatedly asserting that she has failed to show how the university's complained-of actions "constitute retaliation." Insofar as this argument is intended to suggest that Gascard has failed to adequately state a causal connection between her protected conduct and the adverse actions, that argument is misplaced, given the alleged temporal proximity between at least some of those actions and her amending the charge (Gascard specifically says, for example, that the increased demands for

15

showings in the gallery came within four months of the

amendment).  See id. (observing that a gap of five months did not

warrant dismissing a retaliation claim as implausible).

The defendants also repeatedly state that the various

measures the university allegedly took against Gascard during the

pendency of the EEOC charge were not "adverse actions," which

they define as "'materially adverse change[s]' in the terms and

conditions of employment" (quoting Richardson v. N.Y. State Dep't

of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999)).  This argument

is--at best--unfortunate, since the notion that workplace

retaliation claims can lie only for actions amounting to

"materially adverse changes in the terms and conditions and

employment" was explicitly rejected by the Supreme Court more

than eight years ago in the landmark case of Burlington Northern

& Santa Fe Railway Co. v. White, 548 U.S. 53 (2006).  Reasoning

that Title VII's "antiretaliation provision, unlike the

substantive [antidiscrimination] provision, is not limited to

discriminatory actions that affect the terms and conditions of

employment," id. at 64, the Court held instead that, to prevail

on a retaliation claim, a plaintiff need show only that "a

reasonable employee would have found the challenged action

materially adverse, which in this context means it well might

have dissuaded a reasonable worker from making or supporting a charge of discrimination," id. at 68 (quotation marks omitted).[6]

In moving to dismiss Gascard's retaliation claim, the defendants do not address this standard, which, as they acknowledged at oral argument, is the presently controlling one and has been for quite some time now.  In any event, the complaint alleges a series of actions--including the dissemination of "personal and sensitive material" to a colleague and increased production demands--that, at least when considered collectively, support a plausible inference that a reasonable worker would have found them materially adverse in the sense that they well might have dissuaded her from making or supporting a charge of discrimination.[7]  See, e.g., Billings v. Town of Grafton, 515 F.3d 39, 54 n.13 (1st Cir. 2008) ("retaliatory actions that are not materially adverse when considered individually may collectively amount to a retaliatory hostile

---

[6]Since the Burlington Northern decision, the First Circuit has applied the same test to retaliation claims arising under the ADA and the ADEA as well.  See, e.g., Gomez-Perez v. Potter, 452 Fed. App'x 3, 4 (1st Cir. 2011) (ADEA); Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 19-20 (1st Cir. 2006) (ADA).

[7]At oral argument, the defendants argued that Gascard's retaliation claim failed insofar as it is based on their "dissemination" of personal information about Gascard by way of filing a position statement in response to her EEOC charge.  As Gascard clarified, however, her claim is not that the defendants disclosed that information to the EEOC, but to one of her colleagues.

work environment."). Accordingly, the defendants' motion to dismiss Gascard's retaliation claim is denied.

### 4.   Individual liability

Although, as just discussed, Gascard's complaint adequately states claims against the university for violations of both the anti-discrimination and the anti-retaliation provisions of the ADA, the ADEA, and Title VII, she cannot press those claims against the university administrators she has also named as defendants here (including the provost, the dean, the former dean, and the human resources director), as she more or less conceded at oral argument.  The Court of Appeals has held that neither the ADA nor Title VII contemplates this sort of "individual employee liability."  See Roman-Oliveras v. P.R. Elec. Power Auth., 655 F.3d 43, 52 (1st Cir. 2011) (ADA); Fantini v. Salem State Coll., 557 F.3d 22, 31 (1st Cir. 2009) (Title VII).  Gascard's Title VII and ADA claims against the individual defendants must be dismissed.

While the Court of Appeals has never expressly decided this question under the ADEA, it has cited approvingly--and extensively--to cases from other circuits relying on the similarities in text and structure between the ADEA and Title VII in holding that the ADEA likewise does not provide for individual liability.  See Fantini, 557 F.3d at 30-31 (citing Birkbeck v.

18

Marvel Lighting Co., 30 F.3d 507, 510-11 (4th Cir. 1994) and
Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 587 (9th Cir.
1993)).  In light of its conclusion that Title VII does not
contemplate individual liability, and its appreciation of the
similarities between Title VII and the ADEA, it is virtually
impossible to imagine that the Court of Appeals would read the
ADEA to contemplate individual liability.  See also Correa-Ruiz
v. Fortuno, 573 F.3d 1, 8 (1st Cir. 2009) (accepting as
uncontested that "there is no individual liability under the
ADEA").  In addition, individual liability under the ADEA "has
been rejected by nine [different] circuit courts of appeals," and
even the two circuits that have approved of the concept have done
so equivocally.  1 Merrick Rossein, Employment Law and Litigation
§ 5:43 (2003 & 2014 supp.) (citing numerous cases).  This court
therefore concludes that, like Title VII and the ADA, the ADEA
does not authorize claims against individual employees, and
dismisses Gascard's ADA claim against the individual defendants.

### 5.  Negligence

Finally, Gascard's complaint alleges that the defendants
were negligent in that each of them "failed to exercise due care
by failing to supervise . . . the remaining defendants . . .
and/or by failing to protect" her.  But "[a]s a general rule, any
claim based upon negligence by an employer or co-employee for

personal injuries arising out of or in the course of employment
is barred" by N.H. Rev. Stat. Ann. § 281-A:8, I(b), which makes
resort to the state workers' compensation scheme the exclusive
remedy for such injuries.  Karch v. BayBank FSB, 147 N.H. 525,
529 (2002).  So Gascard cannot recover against the university or
any of its employees to recover for alleged injuries she suffered
due to their allegedly negligent failure to prevent the adverse
workplace actions taken against her.  See id. (affirming the
dismissal of employee's claim that employer and supervisor
negligently caused her emotional distress as barred by the
workers' compensation exclusivity provision).

The court therefore grants the defendants' motion to dismiss
Gascard's negligence claim.  This ruling, of course, has no
effect on Gascard's claims under federal anti-discrimination law,
which authorizes her to recover for whatever emotional distress
and other injuries she suffered from the defendants' allegedly
discriminatory and retaliatory acts notwithstanding the state-law
workers' compensation bar.  See, e.g., McCusker v. Lakeview
Rehab. Ctr., Inc., 2003 DNH 158, 2003 WL 22143245, at *4 (D.N.H.
Sept. 17, 2003) ("federal laws forbidding discrimination in
employment have consistently been held to preempt the exclusivity
provisions of state workers' compensation statutes").

**B.    Amendment/supplementation**

Gascard, for her part, has filed a motion to amend or to supplement her complaint.  See Fed. R. Civ. P. 15(a)(2), (d). Rule 15(a) directs that, while amending a complaint requires leave of court when (as now) more than 21 days has passed since a defendant has filed a motion to dismiss it, "[t]he court should freely grant leave when justice so requires."  Rule 15(d), meanwhile, provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

Rule 15(d), then, applies to Gascard's request to add her claim of FMLA retaliation, which arises out of Dean McKeever's removing Gascard from her role as director of the art gallery in January 2015, following her return from FMLA leave the prior month.  The defendants object "on grounds of both futility and undue delay," but they do not develop their "undue delay" objection.  In any event, there has been no "undue delay," since Gascard alleges that she was relieved of her responsibilities as gallery coordinator on January 13, 2015, and she filed her motion to supplement her complaint with that event less than two weeks later, on January 26, 2015.

The court also disagrees with the defendants that Gascard's proposed supplemental claim would be futile. "Courts, including this one, generally assess motions to supplement pleadings under the same statute applicable to motions to amend. The denial of a proposed supplement on grounds of futility is therefore proper." Mueller Co. v. U.S. Pipe & Foundry Co., 351 F. Supp. 2d 1, 2 (D.N.H. 2005) (citations omitted). At this early stage of a case, however, "the accuracy of the 'futility' label is gauged by reference to the liberal criteria" of Rule 12(b)(6), Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001), under which, again, a claim is adequately pled so long as the supporting facts, taken as true, make it plausible on its face, see Iqbal, 556 U.S. at 678-79.

Without addressing this standard, the defendants nevertheless argue that Gascard's proposed FMLA retaliation claim would be futile because, while she alleges that McKeever reassigned her duties as gallery director "in retaliation for taking leave," her factual allegations "support[] a different conclusion," namely, that the reassignment was necessitated by her taking sabbatical during the spring 2015 semester.[8] Again,

---

[8]The defendants further argue that Gascard's proffered FMLA claim is "speculative and premature" insofar as she alleges a "fear that she may possibly suffer an adverse employment action in the future upon her return from sabbatical." But Gascard's FMLA retaliation claim is not based on speculation that she might

though, dismissal for failure to state a claim (and, accordingly, rejection of a proposed claim as futile) is not appropriate simply because the plaintiff's allegations <u>could</u> support the conclusion that the defendant did nothing wrong--the allegations must point to that as the only plausible inference.  <u>See id.</u>

That is not the case here, where Gascard says that she was relieved of her duties over the gallery before the spring 2015 semester even commenced (which was also less than one month after she had returned from FMLA leave) and, moreover, her original complaint alleges a number of prior acts on the part of the university that, on her plausible interpretation of them, manifested its indifference or worse to the very same disability that necessitated her resort to FMLA leave.  The proposed supplement sufficiently sets forth a claim of FMLA retaliation.[9]

---

lose the duties of gallery director in the future--it is based on the fact, already transpired, that she has lost those duties and been told that they may not be reassigned to her when she returns from sabbatical.

[9]Gascard seeks to assert this claim against both the university and McKeever, noting in her motion that district courts within the First Circuit have recognized individual liability under the FMLA, relying on differences between that statute and Title VII (which, as discussed <u>supra</u>, does not contemplate individual liability).  <u>See</u>, <u>e.g.</u>, <u>Reilly v. Cox Enters., Inc.</u>, No. 13-785S, 2014 WL 4473772, at *10 (D.R.I. Apr. 16, 2014) (citing cases).  But the First Circuit itself has never endorsed that view, and some courts have rejected it, <u>see</u>, <u>e.g.</u>, <u>Carter v. Rental Uniform Serv. of Culpeper, Inc.</u>, 977 F. Supp. 753, 759-60 (W.D. Va. 1997).  This court need not decide the

See Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003).
Gascard's motion to supplement her complaint to add that claim,
then, is granted over the defendants' objection.

But Gascard's motion to amend her complaint to add a claim
for intentional infliction of emotional distress based on
McKeever's actions is denied.  Such a claim requires conduct "'so
outrageous in character, and so extreme in degree, as to go
beyond all possible bounds of decency, as to go beyond all
possible bounds of decency, and to be regarded as atrocious, and
utterly intolerable in a civilized community.'"  Mikell v. Sch.
Admin. Unit No. 33, 158 N.H. 723, 728-29 (2009) (quoting
Restatement (Second) of Torts § 46 cmt. d, at 73 (1965)).  As
already discussed, McKeever's alleged role in failing to
accommodate Gascard's disability, subjecting her to additional
demands in the wake of her EEOC filings, and relieving her of her
responsibilities over the art gallery has given rise to plausible
claims against the university for violations of federal
employment law.  Nevertheless, those actions come nowhere near
the "formidable standard," id., necessary to support a claim for
intentional infliction of emotional distress.  See, e.g., Katz v.
McVeigh, 931 F. Supp. 2d 311, 357 (D.N.H. 2013).  Gascard's

---

question at present, however, since the defendants have not
challenged Gascard's proposed FMLA claim on that basis.

motion to amend her complaint to add such a claim is denied, because the claim would be futile (so the court need not and does not reach the defendants' alternative argument that the proffered amendment was unduly delayed).

## III. **Conclusion**

For the foregoing reasons, the defendants' motion to dismiss[10] the original complaint is DENIED, except as to the individual defendants and the negligence claim (count 6), as to which it is GRANTED.  Gascard's motion to supplement and amend the complaint[11] is GRANTED so as to add a claim for FMLA retaliation against the university and McKeever, but DENIED as to a claim for intentional infliction of emotional distress.  The other individual defendants (Kim Mooney, Paul Kotila, and Janette Meredith) are TERMINATED from the case.

The clerk shall redocket the supplemented complaint attached to plaintiff's motion to amend/supplement pleading.[12]  The remaining defendants shall file an answer to the supplemented complaint within 14 days of the re-filing.  See Fed. R. Civ. P. 15(a)(3).  Within 14 days of the filing of the defendants'

---

[10]Document no. 8.

[11]Document no. 13.

[12]Document no. 13-2.

answer, the parties shall confer (by telephone if preferable) for the purposes of submitting a joint discovery plan.  <u>See</u> Fed. R. Civ. P. 26(f).  In the meantime, the court will schedule the preliminary pretrial conference.

       **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  March 11, 2015

cc:  Lorettann Gascard, pro se
     Naomi Butterfield, Esq.
     Talesha L. Caynon, Esq.